# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHERIE DEFFENBAUGH,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **WINCO FIREWORKS** ) <br> **INTERNATIONAL, LLC and** ) <br> **RALPH APEL,** ) <br> ) <br> ) <br> ) <br> **Defendants.** ) <br> ) | **CIVIL ACTION** <br><br> **No. 06-2516-CM** |

## MEMORANDUM AND ORDER

Plaintiff Cherie Deffenbaugh ("plaintiff") brings this action against defendants Winco Fireworks International, LLC ("defendant Winco") and Ralph Apel ("defendant Apel") (collectively "defendants"), alleging defendants violated the Family Medical Leave Act ("FMLA") by terminating her employment. She alleges that defendants retaliated against her in violation of the FMLA and interfered with her FMLA rights. This matter is before the court on defendants' Motion for Summary Judgment (Doc. 142).

**I.     Factual Background**

Defendant Winco is in the business of selling fireworks. Plaintiff began working as a receptionist for defendant Winco in December 2001. In February 2003, plaintiff was promoted to Administrative Assistant to the Office Manager. At that time, the Office Manager was responsible for human resources and office administrative functions. In December 2005, the Office Manager retired and her job responsibilities were split between the office manager position and a new

position, Human Resources Manager. Plaintiff became the Human Resources Manager. As the new Human Resources Manager, plaintiff helped draft her job duties, which included maintaining workers' compensation files, reviewing workers' compensation bills, and submitting workers' compensation bills for payment. Neither of the written job descriptions for the Office Manager or the Human Resources Manager specifically sets out the duty of ensuring that workers' compensation insurance premiums were timely paid.

On April 26, 2006, the Executive Committee, which included defendant Apel, Tim Collar, Martin Hanna, John Collar, and Theresa Alonge, gave plaintiff a written and verbal performance warning. The warning listed several performance deficiencies, including, "failure to timely submit insurance invoices for payment including two United Healthcare invoices, an invoice for American Medical Security, and a workers' compensation invoice." That same day, the Executive Committee met with plaintiff to discuss her performance deficiencies. Plaintiff disputed many of the issues, but was aware that defendants were not happy with her performance.

On May 3, 2006, Mr. Hanna e-mailed Tim Collar, copying plaintiff, informing him that May invoices for health and dental insurance were found in the middle of plaintiffs' inbox unopened. On May 4th, plaintiff e-mailed Mr. Hanna and Tim Coller apologizing for and explaining the unopened invoices. In her email, plaintiff recognized that invoices need to be opened and given to accounting the day they are received; explained that some of the inquiries found in her in-box were duplicates and had already been resolved; and apologized for the necessity to go through her in box. She also recognized that her actions speak for themselves. That same day, Mr. Hanna responded, telling plaintiff that he needed her to commit to crossing all T's and dotting all I's and that he believed she could perform better.

On May 5, 2006, plaintiff signed a document acknowledging that the Executive Committee was aware of four insurance invoices that plaintiff had given to the accounting department late. Those invoices included March 18th and 20th United Health Care invoices, a March 17th bill from American Medical Security, and a March 3rd workers' compensation invoice. The document also summarized the issues discussed in plaintiff and Mr. Hanna's May 4th emails.

In late August, plaintiff told Tim Collar that she would be scheduling a hysterectomy at her next doctor's appointment, but she did not know when she would have the surgery. In the fall of 2006, defendant Winco's Chief Financial Officer resigned and defendant Winco decided to reorganize. In early October 2006, defendant Apel was notified that he would be hired as defendant Winco's Chief Operating Officer, effective November 1st. Additionally, David Collar would be Chief Executive Officer, Mike Collar would be President, and Hien Nyguen would be the Controller.

In late October, plaintiff's son was hospitalized, and plaintiff asked the Executive Committee for FMLA leave. In an October 25, 2006 email to the Executive Committee, she told the committee that she would need time off to care for and take her son to doctor's appointments over the following four weeks. On October 27th, defendant Apel responded via email, stating that they would need to discuss the request because FMLA is unpaid medical leave. When plaintiff and defendant Apel discussed plaintiff's FMLA request, defendant Apel made it clear he wanted her to use paid time off instead of FMLA leave. Later that same day, defendant Apel sent the following email to Mike and David Collar:

> David & Mike:
>
> I wanted to give you my schedule for Cherie. My plan is to talk to our attorney about structuring the elimination of Cherie's position ASAP. Her last day would be Friday, November 3rd if we can get everything together.

> I have kept Tim in the loop because he will need to take over the payroll responsibilities. I would like us to agree on an increase for Tim for him taking on these additional responsibilities. Tim is now making $35K or $36K and I think it would be reasonable to give him an additional $5K to $10K.
>
> Also, we are going to have an office meeting Wednesday morning, Nov. 1st and I would like to announce the new management structure (David as CEO, Mike as President, me as COO and Hien as Controller).
>
> Please give me your thoughts.
>
> Best Regards,
> Ralph J. Apel, COO
> Winco Fireworks International

Sometime in late October, Tim Collar, defendant Apel, or both found additional unpaid invoices in plaintiff's inbox. Defendants also learned that the workers' compensation policy for Pennsylvania Pyro Plus PL ("Pennsylvania Pyro") was canceled due to non-payment of its premium. On November 3, 2006, plaintiff was laid off. When telling plaintiff she was being terminated, defendant Apel did not tell her it was due to poor performance; instead, he told her defendant Winco was eliminating her position.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    Discussion

### A.     Retaliation

Plaintiff claims that by terminating her employment, defendants retaliated against her for protected activity under the FMLA. The FMLA prohibits retaliation by employers against employees who exercise their statutory rights. 29 U.S.C. § 2615(a)(2); *Ney v. City of Hoisington, Kan.*, 264 F. App'x 678, 682 (10th Cir. 2008). To establish a prima facie case of FMLA retaliation, plaintiff must show: (1) she engaged in protected activity; (2) a reasonable employee would have found defendants' action materially adverse; and (3) there is a causal connection between her protected activity and defendants' adverse action. *Id.*

When analyzing FMLA retaliation claims, the court applies the traditional burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997) (citation omitted). Under this framework, a defendant may rebut a prima facie case of retaliation by offering legitimate, non-retaliatory reasons for the adverse action. *Id.* (citation omitted). Once a defendant offers such reasons, plaintiff must present evidence that defendants' reasons are unworthy of belief. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1321 (10th Cir. 1997). The plaintiff's burden "is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Id.* (citation omitted). The plaintiff's evidence can also allow for an inference that the proffered non-discriminatory reasons were a *post hoc* fabrication. *Plotke v. White*, 405 F.3d 1092, 1102–03 (10th Cir. 2005). However, plaintiff's "mere conjecture that [her] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

For purposes of this motion, defendants do not argue that plaintiff cannot establish a prima facie case of retaliation. Instead, defendants argue that they had a legitimate, non-retaliatory reason for terminating plaintiff's employment—plaintiff's performance issues. Specifically, after two

-5-

warnings on the same issue, plaintiff failed to submit an October 2006 insurance invoice to accounting, which resulted in cancellation of the Pennsylvania Pyro workers' compensation policy. The court finds that defendants have articulated a legitimate, non-retaliatory reason for terminating plaintiff's employment. Thus, the court must consider whether plaintiff has presented evidence to raise a genuine issue of material fact regarding defendants' proffered reason for her termination.

Plaintiff may establish pretext by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Twilley v. Integris Baptist Med. Ctr., Inc.*, 16 F. App'x 923, 925 (10th Cir. 2001) (quoting *Morgan*, 108 F.3d at 1323). This is typically done by (1) showing the defendant's legitimate reason is false, (2) showing that "the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances . . . ; or (3) [showing] that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (citations omitted).

To establish pretext, plaintiff relies on the following facts: (1) defendant Apel first suggested terminating plaintiff within two hours of her request for FMLA leave; (2) Mike Collar admitted that he, David Collar, and defendant Apel discussed and considered plaintiff's medical absences for herself and her family when terminating her employment; (3) defendant Apel used an intimidating manner in refusing to allow plaintiff to take FMLA leave and he refused to accept her medical documentation; (4) plaintiff was not responsible for paying the workers' compensation insurance premium for Pennsylvania Pyro; and (5) defendant Apel suggested firing plaintiff prior to the time he and Tim Collar found unpaid invoices in plaintiff's inbox.

The Tenth Circuit has "never allowed 'even very close temporal proximity [taken alone] to operate as a proxy for the evidentiary requirement that the plaintiff demonstrate pretext.'" *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1290 (10th Cir. 2007) (citing *Metzler*, 464 F.3d at 1172). A plaintiff can, however, survive summary judgment when temporal proximity is coupled with additional facts that support pretext. *Metzler,* 464 F.3d at 1172 (holding the plaintiff must "present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive" to establish pretext). Here, there is evidence of temporal proximity—the October 25-27 discussion of plaintiff's FMLA leave and defendant Apel's October 27th email discussing the plan for plaintiff's termination. But the court must consider the other evidence presented by plaintiff in order to determine whether plaintiff has shown defendants' business reason is pretextual.

The court finds that plaintiff has raised a genuine issue of fact as to whether defendants' alleged legitimate business reasons for terminating her employment were legitimate. Defendants allege that they relied on additional unpaid invoices found in plaintiff's inbox in October 2006 as a reason to terminate her employment. However, the record is unclear whether defendant Apel, who ultimately made the decision to terminate plaintiff, learned of the unpaid invoices before or after his decision to terminate plaintiff. In his deposition, defendant Apel testified that he spoke face-to-face with Tim Collar about the additional unpaid invoices after he and plaintiff spoke about her FMLA leave. (Pl.'s Brief, Ex. D at 21:15-23:18.) Tim Collar testified in his deposition that he only spoke face-to-face with defendant Apel about plaintiff twice after her request for FMLA leave—first, when he gave defendant Apel the name of defendant Winco's attorney and second when he learned that defendant Apel had decided to terminate plaintiff. (Pl.'s brief, Ex. H at 41:20-43:2-21.) This factual dispute coupled with the temporal proximity between plaintiff's request for FMLA leave and defendant Apel's email setting forth the schedule for plaintiff's termination raises genuine issues of

-7-

material fact regarding defendants' business reasons for terminating plaintiff. Additionally, the court notes that the record includes a December 5, 2006 email from defendant Apel that raises question of whether defendants' reliance on plaintiff's poor performance was a *post hoc* fabrication. The email states defendants "should have fired [plaintiff] for cause." (Pl.'s Brief, Ex. X at 2.) Accordingly, defendants' motion for summary judgment on plaintiff's FMLA retaliation claim is denied.

### B.     Interference

Plaintiff claims that by terminating her employment, defendants interfered with plaintiff's FMLA rights. To establish a prima facie case for FMLA interference, plaintiff must show: "'(1) that [s]he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [her] FMLA rights.'" *Satterlee v. Allen Press, Inc.*, 274 F. App'x 642, 645 (10th Cir. 2008) (quoting *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1319 (10th Cir. 2005)). "[A]n employee who is entitled to FMLA leave may nevertheless be terminated if there is no causal connection between the termination and her rights under the FMLA." *Id.*

Defendants argue that plaintiff cannot establish that her termination was related to her request for FMLA leave because she was terminated due to her failure to timely pay insurance invoices. As discussed above, there is a genuine issue of material fact regarding defendants' reason for terminating plaintiff's employment. Thus, defendants' motion for summary judgment on plaintiff's FMLA interference claim is also denied.

-9-

**IT IS THEREFORE ORDERED** that defendants' Motion for Summary Judgment (Doc. 142) is denied.

Dated this <u>11th</u> day of March 2009, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**